WILLIAM T. HART *vs.* THE BOSTON, HARTFORD AND ERIE RAILROAD COMPANY.

The act of 1869 provides that the Superior Court, as a court of equity, may, on the application of any stockholder, pass a decree dissolving any corporation and winding up its affairs, where such corporation has abandoned the business for which it was organized, and has neglected for an unreasonable time to wind up its affairs and distribute its effects among its stockholders. Held, in a case where a railroad company had so abandoned its business and neglected to wind up its affairs, that it was not a sufficient reason for a refusal of the court to dissolve the corporation—

1. That the railroad company had received its franchise from other states as well as from this state, the dissolution affecting only the franchise conferred by this state.

2. Nor the fact that the railroad company had been carried into bankruptcy and that its assets were in the hands of assignees in bankruptcy.

3. Nor the fact that the abandonment of its business by the railroad company had not been of free choice, but compelled by legal proceedings and other causes, which it could not successfully resist.

BILL IN EQUITY, praying for a decree dissolving the respondent corporation; brought to the Superior Court in New Haven County.*

---

* The statute under which the suit was brought was passed in the year 1869 and is as follows:

"The Superior Court, as a court of equity, may, on the application of any stockholder in any corporation organized under the laws of this state, wind up the affairs of said corporation and dissolve the same, whenever it shall appear to said court that said corporation has voted to wind up its affairs, or has abandoned the business for which it was organized, and has neglected for an unreas-

The petition alleged that the petitioner was the owner of ten shares of the capital stock of the Boston, Hartford & Erie Railroad Company, a corporation established by and organized under the laws of Connecticut; that the corporation, on the 19th day of March, 1866, by its deed of mortgage, afterward confirmed by the laws of this state, conveyed to certain trustees all its railways, franchises, charters, and property then owned or thereafter to be acquired for railway uses, a copy of which mortgage was annexed to the petition; that the corporation afterward, on or about the 2d day of August, 1870, became utterly insolvent, and upon the petition of George Ellis, one of its stockholders, preferred to the Superior Court in Hartford County, was by that court, by a decree passed with the consent of the corporation, enjoined against the further prosecution of its railway business, and all its property transferred to George M. Bartholomew and others as receivers; that afterward the receivers were ordered by the court to deliver over all the property to the trustees under the mortgage, and that the same was accordingly delivered over to them on or about the 17th day of September, 1871; that afterward, by the expiration of the period of eighteen months thereafter and in accordance with a certain decree of foreclosure passed in the suit in Hartford County, the title to all the mortgaged property became absolute in the trustees, as such; that afterward, on the 17th day of April, 1873, the holders of the mortgage debt were duly called together pursuant to the provisions of the mortgage, and met at Boston, in the state of Massachusetts, pursuant to said call, and voted to form a corporation by the name of the New York & New England Railroad Company, and thereupon did form such corporation, which now had a right to all the franchises of the respondent corporation, and had been duly recognized as entitled to the same by the laws of Connecticut, and its organization fully ratified and confirmed; that since on or about the

onable time to wind up its affairs, and distribute its effects among its stockholders; and to this end and for this purpose may appoint a receiver or receivers of all evidences of debt, goods, effects, and property of every description, belonging to said corporation."

2d day of August, 1870, the respondent corporation had wholly abandoned the business for which it was organized; and that on or about the 21st day of October, 1870, a petition in bankruptcy was filed against it in the District Court of the United States for the district of Massachusetts, wherein it then had a place of business, upon which it was afterward adjudged a bankrupt, and assignees appointed to receive a conveyance of all its assets, to whom the same were afterward duly conveyed, and who were now engaged in settling its estate before that court; that the respondents had done no corporate acts since on or about the date of the appointment of the receivers, and had ever since and for an unreasonable time neglected to wind up their affairs and distribute their effects among their stockholders; except so far as they voted to wind up their affairs· by agreeing to the appointment of receivers; and that the respondents had not surrendered their charter to the state by any formal act in that behalf; that the last principal place of business of the corporation, within this state, and its present principal place of business, was at the railroad station in the town of Waterbury; and that Henry Stoddard, of New Haven, and other residents of New Haven County, were stockholders of the corporation. The petitioner thereupon prayed that the court, on finding the allegations of the petition to be true, would wind up the affairs of the respondent corporation, and decree that the same be dissolved.

The respondents filed an answer and the petitioner a replication, the matters set up in which appear sufficiently in the finding of facts.   The following facts were found by a committee:

The respondents are a corporation duly incorporated and organized by and under the laws of this state, in the year 1863.   The petitioner has been since the year 1868, and still is, the owner of ten shares of the capital stock of the corporation, and Henry Stoddard, residing in the county of New Haven, is the owner of one share of the stock, and has owned the same since September, 1869.

The corporation had an office and principal place of busi-

ness in this state, at the railroad station in Waterbury in New Haven County, until the winter of 1869–70, when it failed to pay its obligations and ceased to work on its road. It did not appear in evidence that this office was ever subordinate to any other office of the company in Connecticut, or that any business had been done there by it since about that time, or that there had been any removal of the office or formal abandonment of it or substitution of any other office for it. It was therefore found that the corporation has its office and principal place of business in said Waterbury.

The respondents, on the 19th day of March, 1866, mortgaged their property by deed to trustees, Robert H. Burdell, Dudley S. Gregory and John C. Bancroft Davis, and the survivor of them and his and their successors and assigns, to secure certain bonds, known as the Burdell mortgage bonds, as set forth in the petition, which mortgage was afterwards confirmed by an act of the legislature of this state. But it did not appear whether this mortgage included all the property then belonging to the corporation or now in its hands or in those of the trustees, or of those having or claiming the rights of either or of the creditors of the corporation.

The corporation made default of payment of the interest due on the bonds, as expressed in the deed, upon the 1st day of January, 1870, and the same has been ever since and still is wholly due and unpaid.

At the July term, 1870, of the Superior Court for Hartford County, upon the petition of George Ellis, making the Boston, Hartford & Erie Railroad Company and said trustees and John S. Eldridge, Mark Healey, Henry W. Farwell, Thomas Talbot and Moses Kimball, real or pretended successors to the original trustees, respondents, (which cause is still pending in that court and subject to its order,) it was ordered and decreed, with the consent of all the parties, that James W. Converse, George T. Olyphant, George M. Bartholomew, Alexander H. Rice and James G. Gardiner, should be receivers of the railroad, and that the railroad company should deliver to them all its property of every kind situated in the state of Connecticut; the decree vesting the legal possession and con-

trol of the property in the receivers, to be managed and
accounted for as prescribed in the decree, and enjoining the
respondents from interfering in any manner with the prop-
erty, except to deliver it to the receivers. And the property
was afterwards delivered to the receivers in pursuance of the
decree.

At the December term, 1870, of the Superior Court for
Hartford County, James C. Ayer was made, by order of
court, a party plaintiff in the cause therein pending.

At the March term, 1871, of the last named court, upon the
petition, answers, and an agreed statement of facts filed in
the cause, and upon the consent of all parties thereto, it was
decreed that Moses Kimball, Thomas Talbot and Avery
Plumer, then were the duly constituted successors to the
original trustees, and in law·the present trustees, under the
mortgage of March 19th, 1866, and vested with all the prop-
erty, franchises, rights, interest, trusts and powers conveyed
by the mortgage to the original trustees, and that upon the
performance of certain conditions in the decree specified, the
receivers appointed by the court should deliver into the pos-
session of the trustees, or their successors in office, all the
railways, property and franchises which they should have in
their hands or possession or under their management or con-
trol as such receivers, and giving to such trustees when so
put in possession the powers and duties prescribed for them
by the terms of the original Burdell mortgage, upon taking
possession for a default in the payment of principal or inter-
est on the bonds thereby secured; and further decreeing that,
if default in the performance of the condition of the mortgage
should continue for the space of eighteen·months after notice
filed, as provided in the mortgage, the whole of the mort-
gaged premises and franchises conveyed by the mortgage
should vest absolutely and in fee in the trustees and their
successors in office without further assurance and without
further process of law, and that all equity of redemption of
the Boston, Hartford & Erie Railroad Company therein
should be forever barred and foreclosed; and that the receiv-
ers should continue in office until the transfer should be

effected upon the performance of the conditions required prior thereto, and until the further order of the court the receivers are still in office.

At the July term, 1871, of the last named court, it was decreed that William T. Hart, Charles P. Clark and George T. Olyphant, then were by valid succession and appointment the trustees, under the mortgage of March 19th, 1866, and the successors in the trusts thereby created, and upon the petition of James C. Ayres, they were admitted as parties respondent in the cause then pending in court.

Afterwards, on or about the 13th day of September, 1871, the property referred to in the decree passed at the March term, 1871, was in pursuance thereof delivered over to the last named trustees, and they took possession of all the property described in the decree and in the Burdell mortgage, and thereupon filed due notice, under date of September 13th, 1871, of such possession and of their purpose to foreclose the mortgage as provided in the mortgage deed, which notice was filed in the office of the secretary of each of the states of Massachusetts, Rhode Island, Connecticut and New York, on or before the 16th day of September, 1871.

The default in the payment of interest continued for a period of eighteen months after the filing of the notices, and thereupon, by the terms of the decree and of the mortgage, the foreclosure and the title to the property became absolute on the 17th day of March, 1873.

On the 17th day of April, 1873, pursuant to a call by the last named trustees in conformity with the provisions of the Burdell mortgage and of the decree, a meeting was held at Boston, of the holders of the Burdell mortgage bonds, and by the meeting a corporation was organized under the name of the New York & New England Railroad Company, and a board of fifteen directors was chosen. At this meeting eighty-two holders of the Burdell mortgage bonds, holding in all 5,812 of the bonds of $1,000 each, were present and took part in the proceedings. And a copy of these proceedings was duly filed in the office of the secretary of this state; and the proceedings have been confirmed by a resolution of the legis-

lature of this state, and the new company declared a corporation, and empowered to receive conveyance and take possession of the property in the hands of the trustees. But whether a conveyance has been made to the new corporation by the trustees did not appear.

On the 21st day of October, 1870, a petition in bankruptcy was filed against the Boston, Hartford & Erie Railroad Company, in the District Court of the United States for the district of Massachusetts, in which district the company then had an office and place of business, and the company was thereupon adjudged a bankrupt, and assignees appointed, who received from the register a conveyance, in the ordinary form prescribed by statute, of all its assets; and proceedings upon the petition are still pending in that court, and the assignees are still acting as such. The respondents held an annual meeting of the corporation at Boston, on the 6th day of September, 1870, at which a board of fifteen directors was chosen. This was the last meeting of the stockholders of the company, so far as appeared in evidence. John Rooney, of the city and state of New York, is acting as their president. The time and manner of his election did not appear. He was not one of the directors chosen at the stockholders' meeting on the 6th of September, 1870. These directors and the president have not in their possession or under their control any of the original books, or any of the property of the respondents, and have not had since about the time of the appointment of the receivers. They have from time to time employed legal counsel in the above and other legal proceedings, and by such counsel have appeared and acted therein; but so far as appeared in evidence the respondents have done no other corporate act since the property came into the hands of the receivers. The corporation has never voted to wind up its affairs and has never surrendered its charter to the state by any formal act.

At the time of the appointment of receivers and for a considerable period prior thereto, the principal office of the Boston, Hartford & Erie Railroad Company was at Boston, its principal transfer books were kept there, as also its principal

books and records, its treasurer had his office there, and its annual meetings were held there.

Down to the last election of officers at the stockholders' meeting on the 6th day of September, 1870, at Boston, there always was but one set of officers for the corporation; namely, one president, one secretary, one treasurer, and one board of directors, who were annually elected.

There remain outstanding and unpaid over two million dollars of mortgage bonds which are a prior lien to the Burdell mortgage.

All the Burdell bonds are outstanding and unpaid (except so far as the foreclosure may have operated as a satisfaction thereof), except one bond of $1,000, which is in the possession of the assignees in bankruptcy.

On the 31st day of July, 1868, the value of the road and property of the respondents was estimated, by commissioners of the state of Massachusetts, to be of the value of at least $12,000,000. Since this estimate was made, a considerable amount has been expended in construction and the purchase of rolling stock.

The respondents, at the time of the appointment of the assignees in bankruptcy, had property or assets other than those covered by the Burdell mortgage, which passed to the assignees.

No evidence was offered by the respondents, except as above, as to the present value of the property now or formerly in their hands, or now in the hands of those representing their creditors, compared with their liabilities, and very little evidence to that point was offered by the petitioner; but from the evidence offered it is found that the property is not sufficient to pay the Burdell bonds, the market value of the bonds being now twenty-three cents on the dollar, and that the stock of the respondents has no appreciable and no market value.

The petitioner was, at the time of the meeting of bondholders held April 17th, 1873, one of the trustees under the Burdell mortgage, and took part in the meeting, and was chosen a director of the New York & New England Railroad Company and its president, and the meeting voted to authorize

the board of directors to adjust and settle the accounts of the trustees, and for an exchange of the Burdell bonds for the stock of the New York & New England Railroad Company; but the allegations of the respondents' answer with regard to the fraudulent ownership of the bonds and a fraudulent conspiracy on the part of the petitioner and others, and the existence of a fraudulent purpose on the part of the petitioner in the acts done at the meeting, were not proved.

The stock of the respondents has been quoted in market, until within a month or two, as valued at about $2 per share, but the allegations of the petitioner, in his replication, as to a purpose on the part of the respondents and their agents to speculate therein, were not proved.

From the facts above set forth it is found that the respondents have abandoned the business for which they were organized and have neglected for an unreasonable time to wind up their affairs and distribute their effects among their stockholders, unless the court should be of the opinion that the facts are not sufficient in law to justify such finding; and if the court should be of opinion that the facts are not sufficient to justify such finding, then such abandonment and neglect are found not to be proved.

Upon these facts the case was reserved for the advice of this court.*

---

* The legislation of the states of Massachusetts, Rhode Island and New York, recognizing the Boston, Hartford & Erie Railroad Company as a corporation, or conferring upon it additional corporate character and power, cannot be given without occupying too much space. That of the state of Massachusetts, which may be taken as a representative of the rest, was as follows; it having been passed in 1868, the company having received its original charter from the state of Connecticut in 1863.

"The Boston, Hartford & Erie Railroad Company, heretofore created in the state of Connecticut, by the legislature thereof, and acting within this commonwealth, and recognized by acts heretofore passed by its legislature, is hereby declared to be a corporation by that name, and vested with all the franchises, powers and privileges, and subject to all the restrictions, duties and liabilities, set forth in the general laws, which now are or hereafter may be in force, relating to such corporations. * * * This act shall not take effect till it has been accepted by the company, at a meeting of the stockholders."

*Baldwin*, for the petitioner.

1. The respondents are to be regarded as a Connecticut corporation, having, or having had, a financial *habitat* in Boston, by reason of which the corporation was, shortly before its failure, formally recognized by the Massachusetts legislature as being a lawful corporation. We do not suppose that this made it what is known as a consolidated corporation; for there was here no concerted or concurrent action by the two states. But if it were to be deemed such, this proceeding would still be simply one for the dissolution of the original Connecticut corporation. *Platt* v. *N. York & Boston R. R. Co.*, 26 Conn., 568; *Ohio & Mississippi R. R. Co.* v. *Wheeler*, 1 Black, 297. The life which Connecticut law gave, Connecticut law can take away. On the other hand the bankruptcy proceedings are against all the corporate property, whatever be the nature of the corporation. *In re Boston, Hartford & Erie R. R. Co.*, 6 Bank. Reg., 209.

2. The bankruptcy proceedings cannot operate to impair the right of Connecticut to dissolve the corporation. It is true that such dissolution cannot in any way affect the bankruptcy proceedings. *In re Merchants' Ins. Co.*, 6 Bank. Reg., 43; *In re Independent Ins. Co.*, id., 169; *S. C.*, id., 260, 271; *Platt* v. *Archer*, id., 494. The provisions of the act of 1869, which authorize the court to appoint receivers, and administer the assets and pay the debts of a corporation, for the dissolution of which a stockholder applies, were suspended, as concerns the respondents, by the filing of the petition in involuntary bankruptcy; but not the provisions authorizing the franchise to be revoked. The spheres of the state and national governments are distinct. It belongs to the state to annul the charter; to the United States to settle the estate. The principal object of the statute is to provide a means of dissolving a corporation; the disposition of its effects, &c., is an incident. In practice in the Superior Court it has not been considered necessary to appoint receivers of the assets of a corporation whose dissolution only was sought, where the court was satisfied that the corporation, though not insolvent, had neither debts nor assets.

3. It may be argued that a decree of dissolution would be useless, because the corporation has been already deprived, by bankruptcy and foreclosure, not only of all its assets, but of all its franchises. The Burdell mortgage declares that the new corporation to be formed in event of a foreclosure, " shall be invested with all the powers, privileges and franchises, and shall be subject to all the duties, liabilities and restrictions, of the Boston, Hartford & Erie Railroad Company," and that the trustees shall convey to it all the mortgaged property and franchises, on being paid and idemnified for their services and liabilities; but the time for the vesting of the property and franchises is when the conveyance is made by the trustees, and such is the language of the confirming act of 1873. Until that event, therefore, it would seem that the corporation may continue to exist, unless, as we ask, it be now dissolved, without prejudice to the successory rights of the new corporation. *Saugatuck Bridge Co.* v. *Town of Westport*, 39 Conn., 350.

4. It may be claimed that the petitioner's interest in having the respondent corporation dissolved, is less as one of its stockholders than as president of the New York & New England Railroad Company, or as a trustee under the Burdell mortgage. " Any stockholder," however, may maintain a petition of this character. It is the interest of every stockholder of an insolvent corporation, engaged in nothing but litigation, to have its existence terminated. If its stock, though in fact worthless, is quoted at $2 a share on the stock exchange, he is in danger of being taxed upon it also at its apparent value. An honest man, moreover, who has given a mortgage, which he has been unable to pay, will be desirous to do everything in his power to perfect the title of his creditor to the mortgage security; and such should be the wish of every stockholder of a corporation which is in similar circumstances. The statute might have confided the power of maintaining such proceedings to a mere stranger. It is an exercise of the power of repeal reserved in the respondents' charter, entrusted by the state to an agent, *pro hâc vice* with the authority of the state.

*R. Christie*, of New York, for the respondents.

1. This court has no jurisdiction or power over the respondents or their assets. By the decree in bankruptcy such power has become vested exclusively in the District Court of the United States for the district of Massachusetts, and therefore this petition should be dismissed.

2. If the power exists in this court to grant a decree of dissolution it would be manifestly improper for it to do so. The application is made by a stockholder holding ten shares of stock out of $25,000,000. His interest as shown by the report of the committee is not with the stockholders of the respondents, but his petition is in fact brought for the benefit of a new corporation, the New York & New England Railroad Company. The existence of that corporation is in no wise affected by this proceeding. If it is a valid corporation no further vitality is given to it by declaring the respondents defunct. On the other hand the officers of the respondent corporation will be deprived of the right of continuing what they are now doing, that is, officially aiding the assignees in bankruptcy in endeavoring to obtain restitution of a large amount of the property of the company which it is claimed was fraudulently appropriated and misapplied. The suit is therefore an illusory one and cannot be maintained. *Waterbury* v. *Merchants' Union Express Co.*, 50 Barb., 168, and cases there cited. Besides all this, the petitioner is not a stockholder of the Connecticut corporation, but of the consolidated corporation, of which the Connecticut corporation was only a part. He obtained his stock in 1869, at which time there was no stock but that of the consolidated corporation.

3. The Connecticut statute providing for dissolving corporations clearly contemplated a corporation which is created by the authority of that state alone, and not one existing by authority of that state and several others. In this case the defendant corporation, by chapter 145 of the laws of Massachusetts for 1868, is expressly made a corporation in that state and subject to all its laws. So also in Rhode Island by a law enacted in 1865, as well as in New York by legislation

enacted in 1864. These several acts were accepted by the corporation and it has existed in the different states under and by virtue of them. Its capital beyond $10,000,000 (authorized by Connecticut) was created by the acts of the other states, and particularly by that of the state of Massachusetts. By this act of Massachusetts the stock of the company was increased to $25,000,000, and that act first gave any authority for the increase. Previously no valid stock of this company could have been created by the laws of Connecticut in excess of the $10,000,000. So that the present certificates of stock of the respondent company derive their entire validity since and from the Massachusetts legislation. It is a case of a Connecticut corporation being created a Massachusetts corporation and corporation of New York and Rhode Island, and, accepting such liabilities, the Connecticut corporation has thus become a corporation in each of the other states. *Bishop* v. *Brainard*, 28 Conn., 298. By familiar law the charter is a contract between the state and the corporation accepting it, so that in this case the respondents have contracted with Massachusetts and the other states as well as Connecticut, and the latter state cannot, being but one of the parties to the contract with the corporation, dissolve it without the consent of the others. The legislature might, under its reserved power to alter and amend the charter, possibly dissolve the connection ; but the judiciary is not possessed of any such authority. A decree of dissolution in this state can have no authority in the other states to affect the powers, and especially the existence, of corporations created by the latter states. *Barclay* v. *Talman,* 4 Edw. Ch., 123 ; *Hamilton* v. *Accessory Transit Co.,* 26 Barb., 46 ; *Murray* v. *Vanderbilt,* 39 id., 140, 147.

4. The respondents have not, in the sense of the statute under which these proceedings are instituted, abandoned the business for which they were organized, and neglected for an unreasonable time to wind up their affairs and distribute their effects among their stockholders. 1st. This statute being in derogation of existing law must be strictly construed. The abandonment must be voluntary and not enforced. There

must be shown some voluntary act of abandonment and neg_
lect.   Here no such case is made.   The respondent corpora-
tion has been compelled to do what it has done by order of
courts it could not disobey.   It has not had the legal power
to wind up its affairs and distribute its effects; therefore it
cannot be said that it for an unreasonable time neglected so
to do.   To neglect is to omit to do a thing in one's power by
carelessness or design.   At no time since the appointment
of the receivers has it had the possession of, or control over,
its effects.   Nor can any trustees who may be appointed by
this court obtain possession of them to distribute amongst its
stockholders.   There is, therefore, no foundation for this pro-
ceeding, no fact appearing in it which brings it within the
object and intent of the statute.   It can avail nothing to a
stockholder, and will be very injurious to the creditors of the
corporation by depriving its officers of the power of aiding
by legal means the assignees in bankruptcy in enforcing
claims of great magnitude against its delinquent debtors.   It
is apparent that the only persons who can be benefited by a
decree of dissolution are such debtors.   And obvious that
making such a decree will prevent the consummation of the
pretended object of this petition, by depriving the United
States court of the ability to wind up the entire affairs of this
corporation—existing in four sovereign States—in the pro-
ceedings in bankruptcy now pending in that court.   2d.   The
officers of the company, since the appointment of the receivers,
have performed the only corporate acts which the courts have ,
left them the power, at present, to perform.   They have
employed counsel to aid the assignees in protecting the prop-
erty and enforcing the rights of the corporation.   Their duty
to their creditors and stockholders required them to do this,
even if the corporation should prove to be wholly insolvent.   And
the court should not deprive them of the power of perform-
ing such duty unless there is an unquestioned necessity for so
doing.   The assignees in bankruptcy have a large number of
suits pending against former officers of the corporation, for
malfeasance and nonfeasance, in the prosecution of which the
counsel for the respondents can render very material aid.

Besides, in this case nothing appears from which the court can know or infer that the corporation, after the estate is settled in bankruptcy, may not receive a large surplus. Insolvency is alleged in the petition, but no attempt has been made to prove it. And even if proved it is not made by the statute a cause for the dissolution of the corporation. Insolvency of a company does not impair its power to manage its affairs. *Pondville Company* v. *Clark*, 25 Conn., 97 ; *Boston Glass Manufactory* v. *Langdon*, 24 Pick., 49 ; *Commonwealth* v. *Tenth Mass. Turnpike Co.*, 5 Cush., 509 ; *Catlin* v. *Eagle Bank*, 6 Conn., 233.

PARK, J. By a statute passed in 1869, entitled an " act relating to corporations," (Acts of 1869, page 219,) it is provided that " the Superior Court, as a court of equity, may on the application of any stockholder in any corporation organized under the laws of this state, wind up the affairs of the corporation, and dissolve the same, whenever it shall appear to the court that the corporation has voted to wind up its affairs, or has abandoned the business for which it was organized, and has neglected for an unreasonable time to wind up its affairs, and distribute its effects among its stockholders." The Superior Court has found that the respondents have abandoned the business for which they were organized, and have neglected for an unreasonable length of time to wind up their affairs and distribute their effects among their stockholders, unless the facts of the case, as they appear in the report of the committee, shall show as matter of law that such was not the case.

The questions of law referred to are quite numerous, and arise out of the complicated affairs of the respondent corporation ; but we are unable to discover that any of them relieve the respondents from the operation of the statute.

It is insisted, in the first place, that the court below had no jurisdiction over the respondents, or over their property, on account of the decree in bankruptcy which has been passed against the respondents by the District Court of the United States in the neighboring state of Massachusetts. But we

think the bankruptcy proceedings cannot operate to impair the right of this state to dissolve a corporation created by the laws of this state. What this state gave in this respect, this state can take away, notwithstanding the United States may have acquired jurisdiction over the property of the corporation sought to be dissolved. The jurisdiction of the two governments is separate and distinct. The one may have the right, by instituting proceedings in bankruptcy, to wind up the affairs of a corporation, and distribute its effects among its creditors; but it belongs to the other to annul the charter which it gave; and its right in this respect must be exclusive and supreme. It follows, therefore, that while the right of the court, under the statute of 1869, to appoint receivers to administer the assets of the corporation, may have been superseded by the proceedings in bankruptcy, the provision of the statute with regard to the dissolution of the respondents' franchise, remains applicable and in full force. We see nothing, therefore, in this claim which can avail the respondents.

Again, it is said that this corporation exists, not only by the laws of this state, but also by the laws of the states of Massachusetts, Rhode Island and New York, into whose territory its franchise extends; and that therefore the statute of this state does not apply to the case; that it can apply only to a corporation created by the authority of this state alone, and that this state can not by its sole action take away a franchise given by other states as well as by this state. But there is nothing in the case that tends to show that the action of these states was concerted or concurrent. Each state acted independently of the others, and we see no reason why the authority of this state over the charter originally granted by it, should be abridged by the proceedings of other states. The decree of dissolution will extend only to the Connecticut charter, leaving the grants of other states unaffected thereby.

It is further claimed that the respondents have never abandoned the business for which they were organized, and have never neglected, for an unreasonable length of time to wind up their affairs and distribute their effects among their stock-

holders, within the meaning of the statute under which the proceedings are instituted ; that there must be some voluntary act of abandonment, and some voluntary neglect to perform the corporate acts specified, in order to bring the case within the purview of the statute. The claim is that all the acts and all the omissions of the respondents in this relation have been forced upon them by a power which they had no means of resisting ; and that therefore there has been no voluntary abandonment of their corporate business, and no voluntary neglect to do the corporate acts required of them.

The error of the respondents consists in confounding the abandonment of their business with the causes that may have compelled it. Abandonment consists in a great measure of intent, and is always voluntary, no matter whether the causes which induce it are within the control of a party or not. A man may abandon a hopeless cause as well as a prosperous one. A seaman may abandon a sinking ship in a violent storm, as well as a staunch ship in fair weather. It is true he has no control over the tempest, or over the sinking condition of his ship, but still the act of abandonment will be as much voluntary in the one case as in the other, for he has it in his power to abide by the ship and go down with it if he pleases, or to leave it at his discretion. One thing or the other he must do, and he chooses abandonment. The question we have to consider in this part of the case is, whether the respondents could abandon the business for which they were organized, although it appears that obstacles were thrown in their way by legal proceedings that rendered it impossible for them longer to continue their business, or, having discontinued, to resume it. The question is one of law. The court below has disposed of the question of fact ; and without dwelling longer upon the subject, we are inclined to think that it might be done, and that consequently this claim of the respondents is without foundation. We are also inclined to think that the expression in the statute, " has neglected for an unreasonable time," &c., means the same thing as " shall fail for an unreasonable time," &c. ; and that consequently the claim which the respondents make upon this point is without

foundation. The object of the statute is a speedy winding up of the affairs of a corporation, when the object for which the corporation was organized has been abandoned; and it is clear that the mischief which the statute seeks to remedy would exist as much, if a corporation should from any cause fail for an unreasonable length of time to wind up its affairs after its business had been abandoned, as it would if the corporation should voluntarily neglect for the same period of time to do the same thing.

Again, it is claimed that if the court has the authority to pass a decree of dissolution against this corporation it is manifestly inequitable for it to do so under the circumstances of the case. It is said that if this decree is passed, the officers of the respondent corporation will be unable to assist the assignees in bankruptcy in their endeavors to obtain restitution of a large amount of the assets of the corporation which have been fraudulently misappropriated. If the property of this corporation has been fraudulently misapplied, we certainly desire that it may be recovered, and should regret to do anything that might seem to throw difficulties in the way of such a result; but we are unable to discover how the corpus of this corporation, which has long since been practically defunct, and has only a technical existence at the best, could be used to any advantage in any such effort. We are also unable to discover why the officers of the corporation may not continue to render their assistance to the assignees in bankruptcy, as well after this decree of dissolution as before. The whole authority is in the hands of the assignees. They represent the interests of all parties concerned. This decree cannot affect them, or their efforts to recover the property which has been squandered, if such is the fact.

We think therefore that we ought to advise the Superior Court to grant the prayer of the petition.

In this opinion the other judges concurred.